El Paso County - County Clerk Doc#1631 Filed 05/03/21 Entered 05/03/21 19:21:25 Exhibit tab 726 Pg 1 of 15

21-03009-hcm Doc#163 Filed 07/22/21 Entered 07/22/21 13:52 PM

Filed 7/22/2020 3:52 PM
Norma Favela Barceleau
District Clerk
El Paso County
2020DCV0914

CAUSE NO. 2020DCV0914

| | | |
|---|---|---|
| WESTAR INVESTORS GROUP, LLC, SUHAIL BAWA, AND SALEEM MAKANI, | § § § | IN THE COUNTY COURT |
| Plaintiffs, | § § | |
| v. | § § | AT LAW NO. 6 |
| THE GATEWAY VENTURES, LLC, PDG PRESTIGE, INC., MICHAEL DIXSON, SURESH KUMAR, AND BANKIM BHATT, | § § § § § § | |
| Defendants. | § | EL PASO COUNTY, TEXAS |

## PLAINTIFFS' FIRST AMENDED PETITION

Plaintiffs Westar Investors Group, LLC, Suhail Bawa and Saleem Makani file this first amended petition against Defendants The Gateway Ventures, LLC, PDG Prestige, Inc., Michael Dixson, Suresh Kumar, and Bankim Bhatt, and would respectfully show the Court as follows:

### I.

### DISCOVERY LEVEL

1. Discovery in this case is intended to be conducted under Level 3 of Rule 190.4 of the Texas Rules of Civil Procedure.

### II.

### PARTIES

2. Plaintiff Westar Investors Group, LLC is a domestic limited liability company doing business in Texas.

3. Plaintiff Suhail Bawa is an individual residing in Texas. The last three digits of his driver's license number are 945, and the last three digits of his social security number are 260.

4. Plaintiff Saleem Makani is an individual residing in Texas. The last three digits of his driver's license number are 644, and the last three digits of his social security number are 260.

5. Defendant The Gateway Ventures, LLC is domestic limited liability company doing business in Texas and has already answered and appeared herein.

6. Defendant PDG Prestige, Inc. is domestic corporation doing business in Texas and has already answered and appeared herein.

7. Defendant Michael Dixson is an individual residing in Texas and has already answered and appeared herein.

8. Defendant Suresh Kumar is an individual residing in Texas and has already answered and appeared herein.

9. Defendant Bankim Bhatt is an individual residing in Texas and has already answered and appeared herein.

### III.

### VENUE

10. Venue is proper in El Paso County, Texas pursuant to Sections 15.011, 15.002 and 15.005 of the Texas Civil Practice and Remedies Code because El Paso County is the county where the real property that forms the basis of this suit is located and is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred.

### IV.

### JURISDICTION AND CLAIM FOR RELIEF

11. The Court has jurisdiction over this matter because Plaintiffs seek damages within the jurisdictional limits of this Court. TEX. R. CIV. P. 47(b). Plaintiffs states that they seeks monetary relief against Defendants of more than $1,000,000. TEX. R. CIV. P. 47(c).

V.

## SUMMARY OF FACTS

12. In or around October 2018, Defendants Suresh Kumar ("Kumar") and his partner, Bankim Bhatt ("Bhatt"), approached Plaintiffs Suhail Bawa ("Bawa") and Saleem Makani ("Makani') about a possible project in El Paso, Texas to build a Marriott hotel. Bawa and Makani met with Kumar and Bhatt on or about November 19, 2018 to visit the hotel site.

13. At that time, Bhatt represented that he already had the Marriott Element Hotel "flag" approved for this hotel site, which was to be approximately 2.4 acres. It was also represented to Bawa and Makani by Kumar and Bhatt that the developer for this site was Defendant Michael Dixson ("Dixson"), and that he was developing the entire 20-acre tract where this project would be located. Bawa and Makani were told that the cost for the 2.4-acre parcel would be approximately $2.8 million. At that time, Bawa, Makani, Kumar and Bhatt agreed to be partners in the deal as follows: 35% for Makani, 35% for Kumar, 15% for Bawa and 15% for Bhatt.

14. Unbeknownst to Bawa and Makani at the time, Dixson was paying Kumar and Bhatt a substantial finder's fee for bringing Bawa and Makani into this project. Also unbeknownst to Bawa and Makani, Kumar and Bhatt were gathering a separate group of investors to bid on a neighboring parcel on the same 20-acre tract to build a competing hotel.

15. Based on Kumar's and Bhatt's representations, Bawa and Makani paid a down payment to Dixon to secure the deal.

16. On or about December 12, 2018, Bawa, Makani and Kumar formed Plaintiff Westar Investors Group, LLC ("Westar") for the purpose of acquiring the above-referenced tract to develop the Marriott Element Hotel. While he had been actively involved in the aforementioned deal, Bhatt was not listed as a member in Westar in the formation documents at that time.

17. However, Bhatt remained actively involved. On or about December 14, 2018, Dixson reached out to Bhatt and Kumar to notify them that he had two hotel sites on the aforementioned 20-acre parcel and that they would have the first option to purchase both. Again, this was completely unknown to Bawa and Makani.

18. Just a few days later, Westar entered into a written Interest Subscription Agreement and Real Property Contract with Defendant The Gateway Ventures, LLC ("Gateway") and Defendant PDG Prestige, Inc. ("Prestige"), both of which are wholly owned and managed by Dixson, on December 17, 2018, as later restated and amended on April 2, 2019 (the "Agreement").

19. Under the Agreement, Gateway and PDG agreed to sell and transfer to Westar approximately 2.3 acres of land located on Gateway Blvd., El Paso, Texas, as reflected on the site plan attached to the Agreement as Exhibit A, for the purpose of constructing the aforementioned Marriott Element hotel (the "Element Hotel Parcel"), in exchange for a purchase price of $2.35 million (the "Purchase Price").

20. On or about December 27, 2018, Dixson contacted Bhatt and Kumar to provide them with a site plan for the entire 20-acre property, including both hotel sites, once more behind Bawa and Makani's backs.

21. On January 1, 2019, a Company Agreement of Westar was prepared by Kumar and Bhatt, whereby Bawa, Makani and Kumar were listed as members, and certain entities owned by Bhatt were also listed as members of Westar. Bawa and Makani did not sign or agree to this Company Agreement, but it was signed by Kumar.

22. A month later, on February 1, 2019, an Operating Agreement was prepared for Westar, in which Bhatt's entities were no longer listed as members of Westar. Kumar and Bhatt stated that Bhatt should not be listed as a member; however, they represented that Kumar would be

giving Bhatt a percentage of his ownership share in Westar. The Operating Agreement was signed by Bawa, Makani and Kumar.

23. Bhatt remained actively involved in the deal throughout the spring of 2019, continuing to be in regular communication with Dixson and Kumar. Further, it was Bhatt and Kumar who paid the franchise fee and provided the requested paperwork to Marriott for the "flag" for the deal, including providing Marriott with the invalid January 1, 2019 Westar Company Agreement listing his entities as members, while knowing that they were not members by virtue of the February 1, 2019 Westar Operating Agreement.

24. The Agreement, as amended, provided that the closing for the sale of the Element Hotel Parcel would be within three months of the effective date, which was April 2, 2019 – making the closing date July 2, 2019.

25. However, Gateway and PDG failed to close on the Element Hotel Parcel on July 2, 2019. Dixson, on behalf of Gateway and PDG, repeatedly misrepresented to Westar what amount of funds were to be deposited and when, and then claimed that Gateway and PDG could not close on time because of Westar.

26. In reality, at all times when Westar was asked to make a deposit towards the Purchase Price, it promptly did so. Some of the funds deposited towards the Purchase Price came from Bawa, some from Makani, and some from Kumar.

27. It was also represented that Westar's investment in the Element Hotel Parcel would be used for Dixson, Gateway and PDG to acquire a loan to purchase the entire 20-acre tract where the Element Hotel Parcel was located. According to Dixson, without Westar's investment, he could not close on the 20-acre tract.

28. In the meantime, Bawa and Makani reimbursed Kumar for the franchise fee for the Marriott "flag." They also learned that Marriott had been provided with the invalid January 1, 2019

Westar Company Agreement and therefore provided Marriott with the February 1, 2019 Westar Operating Agreement listing the proper members of Westar for the hotel deal so that Marriott could issue the final license for the deal.

29. This led Marriott to question the previous document that had been provided, namely the January 1, 2019 Westar Company Agreement listing different members. On or about July 10, 2019, Kumar and Bhatt inexplicably told Marriott that it should use the invalid January 1, 2019 Westar Company Agreement as the basis for issuing the license.

30. Marriott continued to believe the foregoing until October 2019, when Bhatt and Kumar finally notified Marriott that the only members in the deal should be those listed on the February 1, 2019 Westar Operating Agreement, not the invalid January 1, 2019 Westar Company Agreement. Bhatt finally signed a rescission of any interest he or any entity controlled by him had in Westar, but not until October 7, 2019.

31. Before the end of 2019, Westar had fully paid the entire amount of the Purchase Price to Gateway and PDG.

32. At around the same time, Bawa and Makani finally learned about the side project that Kumar and Bhatt had been leading since 2018 with a separate group of investors to close on a neighboring parcel of land out of the 20-acre tract that Gateway and PDG were developing (the "Side Project"), representing a gross conflict of interest by Kumar and Bhatt.

33. Worse yet, Kumar and his partners in the Side Project began making representation to Gateway and PDG regarding funds Kumar deposited with Gateway under the Agreement to be used for the Element Hotel Parcel. More specifically, Kumar and his partners in the Side Project made representations that certain funds Kumar had unambiguously paid to Gateway to be used for the Element Hotel Parcel were instead intended to be used for the Side Project.

34. Based on the foregoing, on January 30, 2020, Dixson, on behalf of Gateway/PDG sent correspondence to the Westar members representing that there was a dispute regarding $1,043,750 that had been deposited by Kumar and where those funds should be allocated: to the Element Hotel Parcel or to the Side Project.

35. Curiously, despite this claimed dispute as to which project Kumar's funds should have been allocated to, Dixson had previously sent correspondence to Westar in or around December 2019 which specifically detailed the funds that Kumar had deposited towards the Purchase Price for the Element Hotel Parcel, which funds Dixson now claimed were disputed.

36. In response to Dixson's January 30, 2020 correspondence, Kumar stated in writing on January 31, 2020 that the sum of $822,500.00 out of the aforementioned funds was in fact intended to be allocated to the Element Hotel Parcel.

37. On February 6, 2020, Dixson, on behalf of Gateway/PDG wrote to the Westar members again and stated that, after taking into account Kumar's $822,500 allocation, there remained due and owing on the Element Hotel Parcel approximately $41,000.00.

38. In response, that same day, Kumar stated in writing that an additional $41,000 out of the aforementioned funds was also intended to be allocated to the Element Hotel Parcel. Dixson acknowledged receipt of this on February 6, 2020.

39. Therefore, as of February 6, 2020, it was admitted and acknowledged in writing by all necessary parties that the entire amount of the Purchase Price had been paid by Westar and allocated to the Element Hotel Parcel.

40. However, despite having Kumar's admissions in writing, Gateway and PDG still refuse to close on the Element Hotel Parcel, claiming there is still a "dispute" as to the allocation of Kumar's funds.

41. If Kumar has in fact reneged on his written admissions and tries to re-allocate his investment from the Element Hotel Parcel to the Side Project, such would be a gross breach of his fiduciary duties to Westar. Kumar has, subsequent to February 6, 2020, refused to state his intentions in writing as to the allocation of those funds.

42. Additionally, upon information and belief, Gateway and PDG have attempted to change or relocate the site plan for the Element Hotel Parcel from the original agreed-upon site plan attached to the Agreement as Exhibit A, to another less-desirable location on the 20-acre tract. This was done without notice to Westar and without its approval. Westar agreed to purchase the Element Hotel Parcel at the location reflected on the site plan attached as Exhibit A to the Agreement and did not agree to Gateway's unilateral change.

43. Plaintiffs are entitled to either a refund of the entire Purchase Price under the Agreement, or alternatively, specific performance requiring Gateway to close on the sale of the Element Hotel Parcel.

44. Despite Westar's demands, Gateway and PDG have refused to close or refund the Purchase Price to Plaintiffs.

45. Upon information and belief, Kumar, Bhatt and Dixson acted together to acquire millions of dollars from Westar and its members, Bawa and Makani, to be used to fund a loan to acquire the entire 20-acre tract of land, but with no intention of ever delivering the Element Hotel Parcel to them.

## VI.

## **BREACH OF CONTRACT**

46. Plaintiffs re-allege and incorporate by reference all allegations contained in the foregoing paragraphs.

47. Gateway and PDG have materially breached the Agreement, as described in the foregoing paragraphs.

48. As a result of the foregoing acts or omissions by Gateway and PDG, Plaintiffs have been damaged in an amount in excess of the minimum jurisdictional limits of this Court, for which they now sue.

49. In addition or in the alternative, Plaintiffs seek specific performance requiring Gateway and PDG to close on the sale of the Element Hotel Parcel and transfer same to Plaintiffs, for which they now sue.

## VII.

## MONEY HAD AND RECEIVED/UNJUST ENRICHMENT

50. Plaintiffs re-allege and incorporate by reference all allegations contained in the foregoing paragraphs.

51. In addition or in the alternative, Gateway and PDG hold money that belongs to Plaintiffs in equity and good conscience and is due and owing, as set forth in the preceding paragraphs.

52. In addition or in the alternative, a benefit has been conferred upon Gateway and PDG and they will be unjustly enriched if they fail to remit the foregoing funds to Plaintiffs as set forth in the preceding paragraphs.

53. As a result of the foregoing acts or omissions by Gateway and PDG, Plaintiffs have been damaged in an amount in excess of the minimum jurisdictional limits of this Court, for which they now sue.

## VIII.

## DECLARATORY JUDGMENT

54. Plaintiffs re-allege and incorporate by reference all allegations contained in the foregoing paragraphs.

55. This controversy involves the parties' rights and responsibilities under the Agreement. Thus, there is an actual and justiciable controversy between the parties over which this Court is vested with the power to determine and declare under the Texas Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies Code.

56. Specifically, Plaintiffs seek a declaration that they have fully complied with all obligations and all conditions precedent under the Agreement, for which they now sue.

## IX.

## STATUTORY FRAUD (TEX. BUS. & COM. CODE § 27.01)/ FRAUD BY NON-DISCLOSURE

57. Plaintiffs re-allege and incorporate by reference all allegations contained in the foregoing paragraphs.

58. Defendants Dixson, Kumar and Bhatt each made false promises or representations of fact to Plaintiffs with regard to an agreement to purchase, acquire or transfer an interest in real estate, as described in the foregoing paragraphs. These Defendants' false promises or representations of fact were made for the purpose of inducing Plaintiffs into an agreement to purchase, acquire or transfer an interest in real estate. Plaintiffs relied on these Defendants' false promises or representations of fact by entering into the Agreement to purchase, acquire or transfer an interest in real estate, which reliance caused Plaintiffs injury. But for the false promises or representations of facts made by these Defendants, Plaintiffs would not have entered into the above-described transaction.

59. In addition or in the alternative, Defendants Dixson, Kumar and Bhatt concealed certain material facts from Plaintiffs, as described in the foregoing paragraphs, which facts these Defendants had a duty to disclose to Plaintiffs. The information concealed by these Defendants was material, Plaintiffs were ignorant of the information, and Plaintiffs relied upon these Defendants' silence because they would not have entered into the above-described transaction had they been made privy to the information.

60. As a result of the foregoing acts or omissions by Defendants, Plaintiffs have been damaged in an amount in excess of the minimum jurisdictional limits of this Court, for which they now sue.

## X.

## BREACH OF FIDUCIARY DUTY

61. Plaintiffs re-allege and incorporate by reference all allegations contained in the foregoing paragraphs.

62. In his capacity as a member of Westar, Kumar owed fiduciary duties to Plaintiffs, including, but not limited to, a duty of loyalty, a duty of candor, a duty of fair and honest dealing, a duty of full disclosure and a duty to refrain from self-dealing, and a duty to act fairly and in the best interest of Westar. By his actions described above, Kumar breached fiduciary duties to Plaintiffs.

63. As a result of the foregoing acts or omissions by Kumar, Plaintiffs have been damaged in an amount in excess of the minimum jurisdictional limits of this Court, for which they now sue.

## XI.

## CONSPIRACY/AIDING & ABETTING

64. Plaintiffs re-allege and incorporate by reference all allegations contained in the foregoing paragraphs.

65. Defendants all acted together to accomplish the unlawful goal of stealing millions of dollars from Plaintiffs. Defendants had a meeting of the minds on the object or course of action and committed one or more unlawful, overt acts to accomplish same.

66. In addition or in the alternative, Kumar and Bhatt assisted and participated in Gateway/PDG/Dixson's commission of unlawful acts by pursuing a common plan or design to commit a tortious act, actually taking part in it or furthering it by cooperation or request, lending aid to the wrongdoer, or ratifying or adopting the wrongdoer's acts.

67. As a result of the foregoing acts or omissions by Kumar, Plaintiffs have been damaged in an amount in excess of the minimum jurisdictional limits of this Court, for which they now sue.

## XII.

## ATTORNEY'S FEES

68. Plaintiffs re-allege and incorporate by reference all allegations contained in the foregoing paragraphs.

69. Plaintiffs have found it necessary to employ the services of the undersigned attorneys to represent them and have agreed to pay the reasonable fees and expenses incurred in prosecuting this matter. Pursuant to Sections 38.001 and 37.009 of the Texas Civil Practice & Remedies Code, Section 27.01(e) of the Texas Business & Commerce Code, and any other applicable provision at law or equity, Defendants are bound and obligated to pay Plaintiffs' reasonable attorney's fees and costs incurred herein, for which Plaintiffs now sue.

## XIII.

## EXEMPLARY DAMAGES

70. Plaintiffs re-allege and incorporate by reference all allegations contained in the foregoing paragraphs.

71. Because Defendants' actions were fraudulent and/or made with actual awareness of the falsity of same, Plaintiffs are entitled to exemplary damages in an amount to be determined by the Court, for which they now sue. TEX. BUS. & COM. CODE § 27.01(c)-(d); TEX. CIV. PRAC. & REM. CODE § 41.003(a)(1).

## XIV.

## CONDITIONS PRECEDENT

72. All conditions precedent to Plaintiffs' recovery have been performed or have occurred.

## XV.

## PRAYER

For the reasons stated, Plaintiffs prays that Defendants be cited to appear and answer herein, and that on final hearing, Plaintiffs Westar Investors Group, LLC, Suhail Bawa and Saleem Makani have judgment against Defendants The Gateway Ventures, LLC, PDG Prestige, Inc., Michael Dixson, Suresh Kumar, and Bankim Bhatt, jointly and severally, for the following:

1. Actual damages in an amount in excess of the minimum jurisdictional limits of the Court;

2. Specific performance;

3. Declaratory relief as requested herein;

4. Exemplary damages;

5. Reasonable and necessary attorney's fees;

6. Pre-judgment interest at the rate of five percent (5%) per annum, or at the highest rate allowed by law;

7. Post-judgment interest at the rate of five percent (5%) per annum, or at the highest rate allowed by law;

8. Costs of suit; and

9. Such other and further relief to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

BROWN FOX PLLC

By: */s/ Eric C. Wood*
Eric C. Wood
State Bar No. 24037737
8111 Preston Road, Suite 300
Dallas, Texas 75225
Phone: (214) 327-5000
Fax: (214) 327-5001
Email: eric@brownfoxlaw.com

ATTORNEYS FOR PLAINTIFFS
WESTAR INVESTORS GROUP, LLC
SUHAIL BAWA AND SALEEM MAKANI

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a true and correct copy of the foregoing has been forwarded in accordance with the Texas Rules of Civil Procedure to all counsel of record via the electronic filing system on the 7th day of July, 2020.

                          */s/ Eric C. Wood*
                          Eric C. Wood