El Paso County - 309th Court Doc#1-32 Filed 05/03/21 Entered 05/03/21 19:21:25 Exhibit Tab 7 Pg 1 of 16

21-03009-hcm

Filed 7/20/2020 1:56 PM
Norma Favela Barceleau
District Clerk
El Paso County
2020DCV0914

CAUSE NO. 2020DCV0914

| | | |
|---|---|---|
| WESTAR INVESTORS GROUP, LLC, SUHAIL BAWA, AND SALEEM MAKANI, | § § § | IN THE COUNTY COURT |
| Plaintiffs, | § § | |
| v. | § § § | AT LAW NO. 6 |
| THE GATEWAY VENTURES, LLC, PDG PRESTIGE, INC., MICHAEL DIXSON, SURESH KUMAR, AND BANKIM BHATT, | § § § § § | |
| Defendants. | § | EL PASO COUNTY, TEXAS |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT BANKIM BHATT'S MOTION TO DISMSS PURSUANT TO TEXAS RULE OF CIVIL PROCEDURE 91a**

Plaintiffs Westar Investors Group, LLC ("Westar"), Suhail Bawa ("Bawa") and Saleem Makani ("Makani") (collectively "Plaintiffs") file this response in opposition to the motion to dismiss filed by Defendant Bankim Bhatt ("Bhatt") under Texas Rule of Civil Procedure 91a (hereinafter the "Motion"), and respectfully shows the Court as follows.

## I. INTRODUCTION

By its Motion, Bhatt asks the Court for the extraordinary remedy of dismissing Plaintiffs' claims against him with prejudice at this early stage, without the benefit of discovery, despite the fact that Plaintiffs have more than met their burden under Texas' "fair notice" pleading standard to plead facts to support their claims against Bhatt. Thus, the Motion should be denied.

## II. BACKGROUND

In or around October 2018, Defendant Suresh Kumar ("Kumar") and his partner, Defendant Bhatt, approached Plaintiffs Bawa and Makani about a possible project in El Paso,

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT BANKIM BHATT'S MOTION TO DISMISS UNDER TEXAS RULE OF CIVIL PROCEDURE 91A

PAGE 1

Texas to build a Marriott hotel.[1] Bawa and Makani met with Kumar and Bhatt on or about November 19, 2018 to visit the hotel site.[2]

At that time, Bhatt represented that he already had the Marriott Element Hotel "flag" approved for this hotel site, which was to be approximately 2.4 acres.[3] It was also represented to Bawa and Makani by Kumar and Bhatt that the developer for this site was Defendant Michael Dixson ("Dixson"), and that he was developing the entire 20-acre tract where this project would be located.[4] Bawa and Makani were told that the cost for the 2.4-acre parcel would be approximately $2.8 million.[5] At that time, Bawa, Makani, Kumar and Bhatt agreed to be partners in the deal as follows: 35% for Makani, 35% for Kumar, 15% for Bawa and 15% for Bhatt.[6]

Unbeknownst to Bawa and Makani at the time, Dixson was paying Kumar and Bhatt a substantial finder's fee for bringing Bawa and Makani into this project.[7] Also unbeknownst to Bawa and Makani, Kumar and Bhatt were gathering a separate group of investors to bid on a neighboring parcel on the same 20-acre tract to build a competing hotel.[8] Based on Kumar's and Bhatt's representations, Bawa and Makani paid a down payment to Dixon to secure the deal.[9]

On or about December 12, 2018, Bawa, Makani and Kumar formed Plaintiff Westar Investors Group, LLC ("Westar") for the purpose of acquiring the above-referenced tract to develop the Marriott Element Hotel.[10] While he had been actively involved in the

---

[1] Plaintiffs' first amended petition, at ¶ 12.
[2] Id.
[3] Id. at ¶ 13.
[4] Id.
[5] Id.
[6] Id.
[7] Id. at ¶ 14.
[8] Id.
[9] Id. at ¶ 15.
[10] Id. at ¶ 16.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT BANKIM BHATT'S**     **PAGE 2**
**MOTION TO DISMISS UNDER TEXAS RULE OF CIVIL PROCEDURE 91A**

aforementioned deal, Bhatt was not listed as a member in Westar in the formation documents at that time.[11]

However, Bhatt remained actively involved.[12] On or about December 14, 2018, Dixson reached out to Bhatt and Kumar to notify them that he had two hotel sites on the aforementioned 20-acre parcel and that they would have the first option to purchase both.[13] Again, this was completely unknown to Bawa and Makani.[14]

Just a few days later, Westar entered into a written Interest Subscription Agreement and Real Property Contract with Defendant The Gateway Ventures, LLC ("Gateway") and Defendant PDG Prestige, Inc. ("Prestige"), both of which are wholly owned and managed by Dixson, on December 17, 2018, as later restated and amended on April 2, 2019 (the "Agreement").[15]

Under the Agreement, Gateway and PDG agreed to sell and transfer to Westar approximately 2.3 acres of land located on Gateway Blvd., El Paso, Texas, as reflected on the site plan attached to the Agreement as Exhibit A, for the purpose of constructing the aforementioned Marriott Element hotel (the "Element Hotel Parcel"), in exchange for a purchase price of $2.35 million (the "Purchase Price").[16]

On or about December 27, 2018, Dixson contacted Bhatt and Kumar to provide them with a site plan for the entire 20-acre property, including both hotel sites, once more behind Bawa and Makani's backs.[17]

On January 1, 2019, a Company Agreement of Westar was prepared by Kumar and Bhatt, whereby Bawa, Makani and Kumar were listed as members, and certain entities owned by Bhatt

---

[11] Id.
[12] Id. at ¶ 17.
[13] Id.
[14] Id.
[15] Id. at ¶ 18.
[16] Id. at ¶ 19.
[17] Id. at ¶ 20.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT BANKIM BHATT'S MOTION TO DISMISS UNDER TEXAS RULE OF CIVIL PROCEDURE 91A

PAGE 3

were also listed as members of Westar.[18] Bawa and Makani did not sign or agree to this Company Agreement, but it was signed by Kumar.[19]

A month later, on February 1, 2019, an Operating Agreement was prepared for Westar, in which Bhatt's entities were no longer listed as members of Westar.[20] Kumar and Bhatt stated that Bhatt should not be listed as a member; however, they represented that Kumar would be giving Bhatt a percentage of his ownership share in Westar.[21] The Operating Agreement was signed by Bawa, Makani and Kumar.[22]

Bhatt remained actively involved in the deal throughout the spring of 2019, continuing to be in regular communication with Dixson and Kumar.[23] Further, it was Bhatt and Kumar who paid the franchise fee and provided the requested paperwork to Marriott for the "flag" for the deal, including providing Marriott with the invalid January 1, 2019 Westar Company Agreement listing his entities as members, while knowing that they were not members by virtue of the February 1, 2019 Westar Operating Agreement.[24]

The Agreement, as amended, provided that the closing for the sale of the Element Hotel Parcel would be within three months of the effective date, which was April 2, 2019 – making the closing date July 2, 2019.[25]

However, Gateway and PDG failed to close on the Element Hotel Parcel on July 2, 2019.[26] Dixson, on behalf of Gateway and PDG, repeatedly misrepresented to Westar what

---

[18] Id. at ¶ 21.
[19] Id.
[20] Id. at ¶ 22.
[21] Id.
[22] Id.
[23] Id. at ¶ 23.
[24] Id.
[25] Id. at ¶ 24.
[26] Id. at ¶ 25.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT BANKIM BHATT'S
MOTION TO DISMISS UNDER TEXAS RULE OF CIVIL PROCEDURE 91A

PAGE 4

amount of funds were to be deposited and when, and then claimed that Gateway and PDG could not close on time because of Westar.[27]

In reality, at all times when Westar was asked to make a deposit towards the Purchase Price, it promptly did so.[28] Some of the funds deposited towards the Purchase Price came from Bawa, some from Makani, and some from Kumar.[29]

It was also represented that Westar's investment in the Element Hotel Parcel would be used for Dixson, Gateway and PDG to acquire a loan to purchase the entire 20-acre tract where the Element Hotel Parcel was located.[30] According to Dixson, without Westar's investment, he could not close on the 20-acre tract.[31]

In the meantime, Bawa and Makani reimbursed Kumar for the franchise fee for the Marriott "flag."[32] They also learned that Marriott had been provided with the invalid January 1, 2019 Westar Company Agreement and therefore provided Marriott with the February 1, 2019 Westar Operating Agreement listing the proper members of Westar for the hotel deal so that Marriott could issue the final license for the deal.[33]

This led Marriott to question the previous document that had been provided, namely the January 1, 2019 Westar Company Agreement listing different members.[34] On or about July 10, 2019, Kumar and Bhatt inexplicably told Marriott that it should use the invalid January 1, 2019 Westar Company Agreement as the basis for issuing the license.[35]

---

[27] Id.
[28] Id. at ¶ 26.
[29] Id.
[30] Id. at ¶ 27.
[31] Id.
[32] Id. at ¶ 28.
[33] Id.
[34] Id. at ¶ 29.
[35] Id.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT BANKIM BHATT'S
MOTION TO DISMISS UNDER TEXAS RULE OF CIVIL PROCEDURE 91A

PAGE 5

Marriott continued to believe the foregoing until October 2019, when Bhatt and Kumar finally notified Marriott that the only members in the deal should be those listed on the February 1, 2019 Westar Operating Agreement, not the invalid January 1, 2019 Westar Company Agreement.[36] Bhatt finally signed a rescission of any interest he or any entity controlled by him had in Westar, but not until October 7, 2019.[37]

Before the end of 2019, Westar had fully paid the entire amount of the Purchase Price to Gateway and PDG.[38]

At around the same time, Bawa and Makani finally learned about the side project that Kumar and Bhatt had been leading since 2018 with a separate group of investors to close on a neighboring parcel of land out of the 20-acre tract that Gateway and PDG were developing (the "Side Project"), representing a gross conflict of interest by Kumar and Bhatt.[39]

Worse yet, Kumar and his partners in the Side Project began making representation to Gateway and PDG regarding funds Kumar deposited with Gateway under the Agreement to be used for the Element Hotel Parcel.[40] More specifically, Kumar and his partners in the Side Project made representations that certain funds Kumar had unambiguously paid to Gateway to be used for the Element Hotel Parcel were instead intended to be used for the Side Project.[41]

Based on the foregoing, on January 30, 2020, Dixson, on behalf of Gateway/PDG sent correspondence to the Westar members representing that there was a dispute regarding $1,043,750 that had been deposited by Kumar and where those funds should be allocated: to the Element Hotel Parcel or to the Side Project.[42]

---

[36] Id. at ¶ 30.
[37] Id.
[38] Id. at ¶ 31.
[39] Id. at ¶ 32.
[40] Id. at ¶ 33.
[41] Id.
[42] Id. at ¶ 34.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT BANKIM BHATT'S  
MOTION TO DISMISS UNDER TEXAS RULE OF CIVIL PROCEDURE 91A

PAGE 6

Curiously, despite this claimed dispute as to which project Kumar's funds should have been allocated to, Dixson had previously sent correspondence to Westar in or around December 2019 which specifically detailed the funds that Kumar had deposited towards the Purchase Price for the Element Hotel Parcel, which funds Dixson now claimed were disputed.[43]

In response to Dixson's January 30, 2020 correspondence, Kumar stated in writing on January 31, 2020 that the sum of $822,500.00 out of the aforementioned funds was in fact intended to be allocated to the Element Hotel Parcel.[44]

On February 6, 2020, Dixson, on behalf of Gateway/PDG wrote to the Westar members again and stated that, after taking into account Kumar's $822,500 allocation, there remained due and owing on the Element Hotel Parcel approximately $41,000.00.[45]

In response, that same day, Kumar stated in writing that an additional $41,000 out of the aforementioned funds was also intended to be allocated to the Element Hotel Parcel. Dixson acknowledged receipt of this on February 6, 2020.[46]

Therefore, as of February 6, 2020, it was admitted and acknowledged in writing by all necessary parties that the entire amount of the Purchase Price had been paid by Westar and allocated to the Element Hotel Parcel.[47]

However, despite having Kumar's admissions in writing, Gateway and PDG still refuse to close on the Element Hotel Parcel, claiming there is still a "dispute" as to the allocation of Kumar's funds.[48]

---

[43] Id. at ¶ 35.
[44] Id. at ¶ 36.
[45] Id. at ¶ 37.
[46] Id. at ¶ 38.
[47] Id. at ¶ 39.
[48] Id. at ¶ 40.

If Kumar has in fact reneged on his written admissions and tries to re-allocate his investment from the Element Hotel Parcel to the Side Project, such would be a gross breach of his fiduciary duties to Westar.[49] Kumar has, subsequent to February 6, 2020, refused to state his intentions in writing as to the allocation of those funds.[50]

Additionally, upon information and belief, Gateway and PDG have attempted to change or relocate the site plan for the Element Hotel Parcel from the original agreed-upon site plan attached to the Agreement as Exhibit A, to another less-desirable location on the 20-acre tract.[51] This was done without notice to Westar and without its approval. Westar agreed to purchase the Element Hotel Parcel at the location reflected on the site plan attached as Exhibit A to the Agreement and did not agree to Gateway's unilateral change.[52]

Plaintiffs are entitled to either a refund of the entire Purchase Price under the Agreement, or alternatively, specific performance requiring Gateway to close on the sale of the Element Hotel Parcel.[53] Despite Westar's demands, Gateway and PDG have refused to close or refund the Purchase Price to Plaintiffs.[54]

Upon information and belief, Kumar, Bhatt and Dixson acted together to acquire millions of dollars from Westar and its members, Bawa and Makani, to be used to fund a loan to acquire the entire 20-acre tract of land, but with no intention of ever delivering the Element Hotel Parcel to them.[55]

---

[49] Id. at ¶ 41.
[50] Id.
[51] Id. at ¶ 42.
[52] Id.
[53] Id. at ¶ 43.
[54] Id. at ¶ 44.
[55] Id. at ¶ 45.

As a result of the foregoing actions, Plaintiffs assert causes of action against Bhatt for statutory fraud/fraud by non-disclosure, and conspiracy/aiding & abetting.[56]

### III. LEGAL STANDARD

Texas Rule of Civil Procedure 91a allows a party to move to dismiss a baseless cause of action on the grounds that it has no basis in law or fact. TEX. R. CIV. P. 91a.1. A motion under Rule 91a must identify each cause of action to which it is addressed and specifically state the reasons the action has no basis in law, no basis in fact, or both. TEX. R. CIV. P. 91a.2. A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. TEX. R. CIV. P. 91a.1. A cause of action has no basis in fact if no reasonable person could believe the facts pleaded. *Id*.

Determinations of whether a cause of action has any basis in law and in fact is a legal question which the Court reviews based on the allegations of the live petition and any attachments thereto. *Weizhong Zheng v. Vacation Network, Inc.*, 468 S.W.3d 180, 183 (Tex. App. – Houston [14th Dist.] 2015, pet. denied); TEX. R. CIV. P. 91a.6. In conducting the review, the Court must construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations in the pleadings to determine if the cause of action has a basis in law or fact. *Id*. at 183-84.

Whether a petition sufficiently alleges a cause of action to survive a Rule 91a motion to dismiss is determined by applying Texas's "fair notice" pleading standard. *Id*. at 184; *See also, Darnell v. Rogers*, 588 S.W.3d 295, 303 (Tex. App.—El Paso 2019, no pet.). Under this standard, a petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim. *Darnell*, 588 S.W.3d at 303 (quotations omitted). For this reason, Rule

---

[56] Id. at ¶¶ 57-67.

91a provides a harsh remedy that should be strictly construed. *In re RNDC Tex., LLC*, No. 05-18-00555-CV, 2018 WL 2773262, at *1 (Tex. App.—Dallas June 11, 2018, no pet.).

Numerous appellate courts have understandably likened the standard for addressing a Rule 91a motion to the standard for addressing a motion under Federal Rule of Civil Procedure 12(b)(6), which provides for dismissal if a plaintiff fails to state a claim upon which relief can be granted. *See GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752, 754 (Tex. App.–Beaumont 2014, pet. denied); and *Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). To survive a Federal Rule 12(b)(6) motion, and thus a Rule 91a motion, the Plaintiff's petition must contain only "enough facts to state a claim to relief that is plausible on its face." *Wooley,* 447 S.W.3d at 76. Since Texas courts treat Rule 91a motions like Rule 12(b)(6) motions under the Federal Rules, they often rely on caselaw interpreting Rule 12(b)(6). *Id*.

Under the Federal Rules, the Court cannot decide disputed fact issues and must assume that all material facts contained in the counterclaim are true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2509 (2007). In addition to accepting all well-pleaded facts as true, the Court must view all facts in the light most favorable to the Plaintiffs. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). The Plaintiffs' complaint must merely provide "enough facts to state a claim to relief that is plausible on its face" but is not required to include "detailed factual allegations." *Guidry v. American Public Life Ins. Co*., 512 F.3d 177, 180 (5th Cir. 2007) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 and 570 (2007).

Thus, like Rule 91(a) motions under the Texas Rules of Civil Procedure, motions to dismiss for failure to state a claim under the Federal Rules are viewed with disfavour and seldom granted. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Dismissal

for failure to state a claim is only proper where there is no legal theory that entitles Plaintiffs to relief, or when the pleadings are so badly stated that they fail to put the Defendant on notice of the circumstances giving rise to the claim or fail to set out at least inferentially the existence of the elements necessary to support the claim. *Walker v. S. Cent. Bell Tel. Co.*, 904 F.2d 275, 277 (5th Cir. 1990). Indeed, "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (2007). (citation omitted).

## IV. ARGUMENT & AUTHORITIES

Against the foregoing backdrop, it is clear that Plaintiffs have more than met their burden of providing Bhatt with fair notice of the facts alleged against him to support their claims.

First, Bhatt's motion is not even ripe at this time because since it was filed, Plaintiffs filed an amended petition adding additional factual allegations, as well as additional causes of action against Bhatt – fraud by non-disclosure and conspiracy/aiding & abetting – which were not present in the original petition and not raised as part of Bhatt's Motion. Thus, the Court should not even consider the Motion at this time, at least with respect to the newly plead allegations and causes of action.

In addition or in the alternative, if the Court is inclined to address the merits of the Motion at this time, it is clear from Plaintiffs' amended petition that they have met their burden under Rule 91a. To be sure, over the course of more than thirty (30) paragraphs in their amended petition, as outlined above, Plaintiffs plead specific facts surrounding Bhatt's involvement with the fraudulent real estate deal from 2018 on, and how he worked in concert with co-defendants Dixson and Kumar to accomplish the goal of swindling Plaintiffs out of millions of dollars.[57]

---

[57] Id. at ¶¶ 12-49.

With respect to the causes of action pled against Bhatt – statutory fraud/fraud by non-disclosure, and conspiracy/aiding & abetting – Plaintiffs incorporated the factual allegations pled in their petition and, furthermore, outlined the elements of each cause of action.

With regard to the statutory fraud/fraud by non-disclosure claim, Plaintiffs pled that Bhatt (and others) made false promises or representations of fact to Plaintiffs with regard to an agreement to purchase, acquire or transfer an interest in real estate, as described in the foregoing paragraphs, that these false promises or representations of fact were made for the purpose of inducing Plaintiffs into an agreement to purchase, acquire or transfer an interest in real estate, that Plaintiffs relied on these false promises or representations of fact by entering into the Agreement to purchase, acquire or transfer an interest in real estate, which reliance caused Plaintiffs injury, and that but for the false promises or representations of facts made by Bhatt (and others), Plaintiffs would not have entered into the above-described transaction.[58] Plaintiffs also plead that ants Bhatt (and others) concealed certain material facts from Plaintiffs, as described in the foregoing paragraphs, which facts he had a duty to disclose to Plaintiffs that the information concealed by Bhatt (and others) was material, that Plaintiffs were ignorant of the information, and Plaintiffs relied upon Bhatt's (and others') silence because they would not have entered into the above-described transaction had they been made privy to the information.[59]

With regard to the conspiracy/aiding & abetting cause of action, Plaintiffs pled that Bhatt and others all acted together to accomplish the unlawful goal of stealing millions of dollars from Plaintiffs, and that Bhatt and others had a meeting of the minds on the object or course of action and committed one or more unlawful, overt acts to accomplish same.[60] Plaintiffs also pled that Bhatt and Kumar assisted and participated in Gateway/PDG/Dixson's commission of unlawful

---

[58] Id. at ¶ 58.
[59] Id. at ¶ 59.
[60] Id. at ¶ 65.

acts by pursuing a common plan or design to commit a tortious act, actually taking part in it or furthering it by cooperation or request, lending aid to the wrongdoer, or ratifying or adopting the wrongdoer's acts.[61]

Bhatt asserts that the foregoing is not sufficient, and that Plaintiffs are required to actually spell out in each cause of action the specific facts supporting each element of the claim, complete with dates, names, locations, etc. for each specific allegation. But neither the Texas Rules of Civil Procedure nor the Federal Rules of Civil Procedure require such. To the contrary, again, Plaintiffs are only required to provide "fair notice" of their claims. Plaintiffs have more than met that burden; no further specificity is required.

If Bhatt wants to know the specific evidence that supports an element of a claim, that is what discovery is for. If, after discovery is conducted, no evidence exists to support a claim, then Bhatt has a remedy. But he is not entitled to the extraordinary relief of dismissal of Plaintiffs' claims against him at this early stage. Accordingly, the Motion should be denied.

## V. REQUEST FOR LEAVE TO AMEND (IN THE ALTERNATIVE)

In the alternative, if the Court agrees with Bhatt that Plaintiffs' petition is insufficient, then Plaintiffs respectfully seek leave of Court to file an amended petition. Under the Federal Rules, courts should not grant motions to dismiss such as these without first giving the Plaintiffs leave to amend, unless the defect is simply incurable or Plaintiffs have failed to plead with particularity after being afforded repeated opportunities to do so. *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000); *See also Arthrocare Corp. v. Smith & Nephew, Inc.*, 406 F.3d 1365, 1370 (Fed. Cir. 2005); *See also Shane v. Fauver*, 213 F.3d 113, 116 (3rd Cir. 2000). Since state courts in Texas have likened the standard for addressing a Rule 91a motion to the standard for

---

[61] Id. at ¶ 66.

addressing a motion under Federal Rule of Civil Procedure 12(b)(6), the foregoing standard should likewise apply here.

This is particularly true since discovery in this case is in its infancy. Plaintiffs have just recently obtained written discovery from Bhatt and the other defendants. However, Plaintiffs were largely met with objections from Bhatt and the other defendants, and although some documents were provided, Plaintiffs received nowhere close to everything that was requested. No depositions have yet been taken.

Thus, if the Court is inclined to grant Bhatt's Motion, Plaintiffs should be given the opportunity to file an amended petition after additional discovery is obtained.

## VI. AWARD OF COSTS AND ATTORNEY'S FEES

The court may award the prevailing party on the motion all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action. TEX. R. CIV. P. 91a.7. An award of costs and attorney's fees is not mandatory. *Id*.

There is no legitimate basis for the Court to award attorney's fees and costs to Bhatt, regardless how the Court rules on the Motion. Conversely, if the Court denies the Motion, as it should, then Plaintiffs should be entitled to their attorney's fees and costs. In the event the Court is inclined to award Plaintiffs the foregoing, they will present evidence of reasonableness and necessity of such fees at the oral hearing on the Motion.

## VII. PRAYER

Plaintiffs pray that the Court denies Bhatt's motion to dismiss, and for such other relief to which Plaintiffs may be entitled at law or in equity.

Respectfully submitted,

BROWN FOX PLLC

By: */s/ Eric C. Wood*
Eric C. Wood
State Bar No. 24037737
8111 Preston Road, Suite 300
Dallas, Texas 75225
Phone: (214) 327-5000
Fax: (214) 327-5001
Email: eric@brownfoxlaw.com

ATTORNEYS FOR PLAINTIFFS
WESTAR INVESTORS GROUP, LLC
SUHAIL BAWA AND SALEEM MAKANI

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing has been forwarded in accordance with the Texas Rules of Civil Procedure to all counsel of record via the electronic filing system on the 7th day of July, 2020.

*/s/ Eric C. Wood*
Eric C. Wood