No. 2020DCV0914

| | | |
|---|---|---|
| WESTAR INVESTORS GROUP, LLC, SUHAIL BAWA, and SALEEM MAKANI | § § § | IN THE COUNTY COURT |
| Plaintiffs, | § § | |
| v. | § § | AT LAW NUMBER SIX (6) |
| THE GATEWAY VENTURES, LLC, PDG PRESTIGE, INC., MICHAEL DIXSON, SURESH KUMAR, and BANKIM BHATT | § § § § § | EL PASO COUNTY, TEXAS |
| Defendants. | § | |

## SURESH KUMAR'S CROSS-CLAIM AND COUNTER-CLAIM

Suresh Kumar ("Kumar") files this his Cross-Claim against The Gateway Ventures, LLC ("Gateway"), PDG Prestige, Inc. ("PDG"), and Michael Dixson ("Dixson") (collectively sometimes referred to herein as "Dixson") and Counter-Claim against Suhail Bawa ("Bawa") and Saleem Makani ("Makani"), and for cause of action would respectfully show the Court as follows:

### DISCOVERY CONTROL PLAN

1.　Kumar pleads discovery should be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure.

### PARTIES

2.　Westar Investors Group, LLC ("Westar"), Bawa, and Makani instituted this suit and are before the Court for all jurisdictional purposes.

3.　Gateway, PDG, and Bankim Bhatt ("Bhatt") have already appeared in this lawsuit.

4.　Dixson has already appeared in this lawsuit. Therefore, he may be served with process through his counsel of record.

## JURISDICTION AND VENUE

5. Jurisdiction is proper over the claims contained herein because Dixson is liable to Kumar for all or part of Bawa and Makani's claims alleged in this suit as well as to Kumar on Kumar's claims against Dixson. Similarly, Bawa and Makani are liable to Kumar for his claims against them. The amounts in controversy are within the jurisdiction limits of this Court.

6. Venue is proper in El Paso County as it is the county in which all or a substantial part of the events or omissions giving rise to the alleged claims occurred and the county in which the above captioned lawsuit was filed.

## BACKGROUND FACTS

7. Dixson represented to Kumar, Bhatt, Bawa, and Makani that he would sell them an approximately 2.3-acre parcel of land upon which they could build a Marriott Hotel. The cost of the parcel continually increased until it reached $2.8 million.

8. On or about December 12, 2018, Bawa, Makani, and Kumar formed Westar, of which they are all still members, for the purpose of acquiring the above-referenced parcel of land to develop the Marriott Element Hotel. Bhatt requested that he not be added as a member in Westar at that time.

9. Westar then entered into a written Interest Subscription Agreement and Real Property Contract with Gateway and PDG, both of which are wholly owned and managed by Dixson, on December 17, 2018, as later restated and amended on April 2, 2019 (the "Agreement").

10. Kumar held a 35% interest in Westar and thus was responsible for 35% of the payments needed to acquire the Element Parcel.

11. Under the Agreement, Gateway and PDG agreed to sell and transfer to Westar

approximately 2.3 acres of land located on Gateway Blvd., El Paso, Texas, as reflected on the site plan attached to the Agreement as Exhibit A, for the purpose of constructing the aforementioned Marriott Element Hotel (the "Element Parcel"), in exchange for a purchase price of $2.35 million (the "Purchase Price").

12. Based on his ownership interest, Kumar was required to invest $822,500 to acquire the Element Parcel.

13. The Agreement provided that the closing for the sale of the Element Parcel would be within three months of the effective date, which was April 2, 2019 – making the closing date July 2, 2019.

14. However, Gateway and PDG failed to close on the Element Parcel on July 2, 2019. Dixson, on behalf of Gateway and PDG, repeatedly misrepresented to Westar what amount of funds were to be deposited and when, and then claimed that Gateway and PDG could not close on time because of Westar.

15. In reality, at all times when Westar was asked to make a deposit towards the Purchase Price, it promptly did so. Some of the funds deposited towards the Purchase Price came from Bawa, some from Makani, and some from Kumar. Bawa and/or Makani filed to make their required pro rata investments which meant that Kumar had to invest additional funds.

16. Ultimately Kumar invested the sum of $1,008,750 into the Westar land purchase. In addition, Kumar invested $111,000 into the Even Hotel project.

17. It was also represented that Westar's investment in the Element Parcel would be used for Dixson, Gateway, and PDG to acquire a loan to purchase the entire 20-acre tract where the Element Parcel was located. According to Dixson, without Westar's investment, he could not close on the 20-acre tract.

18. Makani hired his attorney to represent Westar in the transaction to acquire the Element Parcel and it was his attorney that prepared the underlying paperwork.

19. Regardless, before the end of 2019, Westar had fully paid the entire amount of the Purchase Price to Gateway and PDG.

20. Because he had either misused or diverted the funds paid by Westar (including Kumar's funds) Dixson misrepresented to Kumar, Bawa, and Makani that funds that Kumar had paid for the Element Parcel were actually paid for a second hotel site.

21. Curiously, despite this claimed dispute as to which project Kumar's funds should have been allocated to, Dixson had previously sent correspondence to Westar in or around December 2019 which specifically detailed the funds that Kumar had deposited towards the Purchase Price for the Element Parcel, which funds Dixson then claimed were disputed.

22. In response to Dixson's January 30, 2020 correspondence, Kumar stated in writing on January 31, 2020 that the sum of $822,500 out of the aforementioned funds was in fact intended to be allocated to the Element Parcel.

23. On February 6, 2020, Dixson, on behalf of Gateway and PDG wrote to Westar again and stated that, after taking into account Kumar's $822,500 allocation, there remained due and owing on the Element Parcel approximately $41,000.

24. In response, that same day, Kumar stated in writing that an additional $41,000 out of the aforementioned funds was also intended to be allocated to the Element Parcel. Dixson acknowledged receipt of this on February 6, 2020.

25. Therefore, as of February 6, 2020, it was admitted and acknowledged in writing by all necessary parties that the entire amount of the Purchase Price had been paid by Westar and allocated to the Element Parcel.

26. However, despite having Kumar's admissions in writing, Gateway and PDG still refuse to close on the Element Parcel, claiming there is still a "dispute" as to the allocation of Kumar's funds.

27. At one point during the dealings with Dixson, Dixson offered to return Westar's investment, which, at that time, equaled approximately $1.1 million. Kumar wanted to accept the offer and end the dealings with Dixson. Makani without calling a meeting of the members of Westar unilaterally decided to reject the offer. Instead, Makani, who unilaterally made the decision as to when the members had to make investments, gave Kumar 24 hours to make his next payment.

28. Additionally, upon information and belief, Gateway and PDG have attempted to change or relocate the site plan for the Element Parcel from the original agreed-upon site plan attached to the Agreement as Exhibit A, to another less-desirable location on the 20-acre tract. This was done without notice to Westar and without its approval. Westar agreed to purchase the Element Parcel at the location reflected on the site plan attached as Exhibit A to the Agreement and did not agree to Gateway's unilateral change.

29. Kumar, Bawa, and Makani stand ready and willing to close on the Element Parcel at the location reflected on the site plan attached as Exhibit A to the Agreement.

30. If Gateway and PDG refuse to close, then Kumar, Bawa, and Makani are entitled to a refund of the entire Purchase Price under the Agreement.

31. Despite Westar's demands, Gateway and PDG have refused to close or refund the Purchase Price to Kumar, Bawa, and Makani.

32. Dixson has also absconded with the almost $2,000,000 paid to him by the purchasers of the second hotel site, resulting in a final judgment against him and PDG.

33. As a result of the above, Westar, Bawa, and Makani initiated this action against Dixson. It is unclear from the Amended Petition whether or not Westar, Bawa, and Makani are seeking to recover Kumar's investment into the Element Parcel or, if they are, whether they intend to reimburse Kumar for his investment.

## CROSSCLAIM

### Money Had and Received/Unjust Enrichment

34. Kumar re-alleges and incorporates by reference all allegations contained in the foregoing paragraphs.

35. In addition, or in the alternative, Dixson holds money that belongs to Kumar in equity and good conscience and is due and owing, as set forth in the preceding paragraphs. This includes Kumar's investment in both the Element Parcel and the parcel intended for the Even Hotel.

36. In addition, or in the alternative, a benefit has been conferred upon Dixson and he will be unjustly enriched if he fails to remit the foregoing funds to Kumar as set forth in the preceding paragraphs.

37. As a result of the foregoing acts or omissions by Dixson, Kumar has been damaged in an amount in excess of the minimum jurisdictional limits of this Court, for which he now sues.

### Statutory Fraud (Tex. Bus. & Com. Code § 27.01)

38. Kumar re-alleges and incorporates by reference all allegations contained in the foregoing paragraphs.

39. Dixson made false promises or representations of fact to Kumar with regard to an agreement to purchase, acquire or transfer an interest in real estate, as described in the foregoing

paragraphs. Dixson's false promises or representations of fact were made for the purpose of inducing Kumar into an agreement to purchase, acquire or transfer an interest in real estate. Kumar relied on Dixson's false promises or representations of fact by entering into the Agreement to purchase, acquire or transfer an interest in real estate, which reliance caused Kumar's injury.

40. As a result of the foregoing acts or omissions by Dixson, Kumar has been damaged in an amount in excess of the minimum jurisdictional limits of this Court, for which he now sues.

### Breach of Fiduciary Duty

41. Kumar re-alleges and incorporates by reference all allegations contained in the foregoing paragraphs.

42. Dixson owed fiduciary duties to Kumar, including, but not limited to, a duty of loyalty, a duty of candor, a duty of fair and honest dealing, a duty of full disclosure and a duty to refrain from self-dealing, and a duty to act fairly and in the best interest of Kumar. By his actions described above, Dixson breached fiduciary duties to Kumar.

43. As a result of the foregoing acts or omissions by Dixson, Kumar has been damaged in an amount in excess of the minimum jurisdictional limits of this Court, for which he now sues.

### Theft Liability

44. Kumar re-alleges and incorporates by reference all allegations contained in the foregoing paragraphs.

45. Dixson's conduct constitutes theft of property under the Texas Theft Liability Act set forth in Chapter 134, TEX. CIV. PRAC. & REM. CODE. Dixson unlawfully appropriated,

secured, or stole Kumar's funds that he contributed toward the Purchase Price of the Element Parcel with the intent to deprive him of it by not returning the funds when expected to do so.

46. As a result of the foregoing acts or omissions by Dixson, Kumar has been damaged in an amount in excess of the minimum jurisdictional limits of this Court, for which he now sues.

## COUNTERCLAIM

47. Kumar re-alleges and incorporates by reference all allegations contained in the foregoing paragraphs.

48. Pursuant to the Texas Declaratory Judgment Act, Kumar seeks a judgment declaring that:

    a. Kumar invested $1,008,750;

    b. Kumar is entitled to recover $1,008,750 for all claims against Dixson and PDG; and

    c. Kumar did not breach any fiduciary duty to Bawa or Makani.

## ATTORNEY FEES

49. Kumar has found it necessary to employ the services of the undersigned attorneys to represent him and has agreed to pay the reasonable fees and expenses incurred in prosecuting this matter. Pursuant to Sections 38.001 and 37.009 of the Texas Civil Practice & Remedies Code, Section 27.01(e) of the Texas Business & Commerce Code, and any other applicable provision at law or equity, Dixson is bound and obligated to pay Kumar's reasonable attorney's fees and costs incurred herein, for which Kumar now sues.

## EXEMPLARY DAMAGES

50. Because Dixson's actions were fraudulent and/or made with actual awareness of

the falsity of same, Kumar is entitled to exemplary damages in an amount to be determined by the Court, for which he now sues. TEX. BUS. & COM. CODE § 27.01(c)-(d); TEX. CIV. PRAC. & REM. CODE § 41.003(a)(1).

## CONDITIONS PRECEDENT

51. All conditions precedent to Kumar's recovery have been performed or have occurred.

## PRAYER

52. For the reasons stated, Kumar prays that Dixson be cited to appear and answer herein, and that on final hearing, Kumar have judgment against Bawa, Makani and Dixson as pled herein for the following:

    a. Actual damages in an amount in excess of the minimum jurisdictional limits of the Court;

    b. Specific performance;

    c. Declaratory relief as requested herein;

    d. Exemplary damages;

    e. Reasonable and necessary attorney's fees;

    f. Pre-judgment interest at the rate of five percent (5%) per annum, or at the highest rate allowed by law;

    g. Post-judgment interest at the rate of five percent (5%) per annum, or at the highest rate allowed by law;

    h. Costs of suit; and

    i. Such other and further relief to which Kumar may show himself justly entitled.

        **GORDON DAVIS JOHNSON & SHANE P.C.**

        */s/Harrel L. Davis III*
        Harrel L. Davis III
        State Bar No. 05567560
        4695 N. Mesa Street
        El Paso, Texas 79912
        (915) 545-1133
        (915) 545-4433 (Fax)
        hdavis@eplawyers.com

        Attorney for Suresh Kumar

**CERTIFICATE OF SERVICE**

    I hereby certify that on December 16, 2020, the foregoing document was electronically served on all parties/attorneys of record.

        */s/Harrel L. Davis III*
        Harrel L. Davis III